**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------x
:
**UNITED STATES OF AMERICA**      :
: **ORDER**
:
**v.**                            :  **01-CR-922 (NG)**
:
**RICHARD LUGO,**                 :
:
         **Defendant.**        :
------------------------------------------------------x

**GERSHON, United States District Judge:**

Defendant Richard Lugo was convicted, after a jury trial, of murder in aid of racketeering and conspiracy to murder in aid of racketeering, in violation of 18 U.S.C. § 1959, and a weapons charge. Presently before me is defendant's supplemental motion, brought by his current attorney David Lewis, Esq., for a judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure and for a new trial under Rule 33. This supplemental motion incorporates the arguments made in an earlier motion, brought by defendant's trial attorney, Bobbi Sternheim, Esq. By order dated April 4, 2004, I denied the motion brought by Ms. Sternheim and stated that the reasons for the denial would be given on the record at defendant's sentencing. However, the supplemental motion having been made by Mr. Lewis, this written decision will address the arguments made on defendant's behalf by both counsel.

In support of his motion for acquittal under Rule 29, defendant argues that the evidence was insufficient to establish that the murder of Lanny Dillard was undertaken on behalf of the D-Nice Enterprise and that defendant was paid with Enterprise funds. Rather, defendant argues, the murder was a personal vendetta undertaken in response to the killing of the brother of Darryl Tyler, who was the leader of the D-Nice Enterprise. Thus, defendant maintains that the government failed to establish a required element of both the conspiracy and the murder charges, namely, that they be

undertaken as consideration for payment *from the enterprise*, that is, that the motive for the violent activities was enterprise-related and not merely personal. Defendant's prior counsel, Ms. Sternheim, also argued that the evidence was insufficient to show that defendant's actions were "in aid" of racketeering because the killing was done for personal reasons of Darryl Tyler.

Defendant's motion for acquittal under Rule 29 is denied. The evidence at trial showed that defendant and his brother were paid by the D-Nice Enterprise to kill members of the Little Jus Crew, a rival drug gang with which the D-Nice Enterprise had been engaged in a turf war for some time. As part of this on-going dispute, members of the Little Jus Crew killed Tweety, a high ranking member of the D-Nice Enterprise who was Tyler's brother, and tried to kill Erwin Stokes, another member of the Enterprise. The jury was entitled to conclude from this evidence that the D-Nice Enterprise was under threat. That the efforts by members of the Enterprise to kill Dillard and other members of the Little Jus Crew intensified after the killing of Tweety is consistent with the evidence of an on-going dispute over drug territory that involved escalating violence. That the drug business may have slowed during this period does not mean that the Enterprise had ceased to function.

The court does not accept the proposition, put forward by the defendant, that the government was required to prove, not only that the Enterprise paid for the murder, but also that the source of the moneys paid to the Lugos was Enterprise activities. In any event, viewing the evidence in the light most favorable to the government, the evidence was sufficient to show that the payment of money, drugs and guns to defendant and his brother, Danny Lugo, was from Enterprise activities. Defendant was paid by Tyler, the head of the D-Nice Enterprise, and by Stokes, a member of the Enterprise. Tyler and Stokes derived money from the Enterprise, and Tyler was its leader.

In sum, given all of the evidence, the jury was entitled to infer that the killing was done as

2

consideration for a payment or a promise of payment from the Enterprise.

None of the evidence relied upon by defendant to show a mere personal vendetta, for example, the ceremony conducted by Tyler in which he displayed a photograph of his dead brother, with members of the Enterprise vowing to kill all of the Little Jus Crew, is inconsistent with the government's theory that the killing was Enterprise-related. Defendant's theory that the killing was merely a personal vendetta was argued at trial and rejected by the jury. The evidence supported the jury's conclusion.

Contrary to defendant's argument, the government is not required to "exclude" a personal vendetta as a purpose for the killing. Rather, the government was required only to prove beyond a reasonable doubt that defendant's general purpose in acting was as consideration for payment from the Enterprise. The evidence was sufficient for the jury to conclude that the payment was made on behalf of the RICO enterprise and that defendant's purpose in acting was as consideration for this payment.

Concerning Ms. Sternheim's argument that the evidence was insufficient to show that defendant's actions were "in aid" of racketeering, there was no requirement, under the clause of Section 1959 under which defendant was charged (commonly referred to as the murder-for-hire clause), that the government prove that, when the defendant murdered or conspired to murder someone for profit, he had to have known that he was engaging in the violent activities to "aid" the racketeering enterprise. As the Court of Appeals for the Second Circuit noted in *United States v. Concepcion*, 983 F.2d 369, 384 (2d Cir. 1993),

> Section 1959 as a whole is sufficiently inclusive to encompass the actions of a so-called independent contractor, for it reaches not only those who seek to maintain or increase their positions within a RICO enterprise, but also those who perform violent crimes 'as

> consideration for the receipt of ... anything of pecuniary value' from such an enterprise.

That was the charge in this case. Although the RICO statute under which the defendant was charged is entitled "Violent Crimes in Aid of Racketeering," there is simply no element of the crime charged in this case that required the defendant to have intended to act in "aid" of the Enterprise or even to know of the existence of the Enterprise.

In support of his motion for a new trial under Rule 33, defendant raises several arguments. Defendant again challenges the sufficiency of the evidence, arguing that there is insufficient credible evidence in the record to connect the payments made to the Lugos to the Enterprise. Specifically, defendant challenges the credibility of Erwin Stokes' testimony and argues that Stokes' testimony as to the source of the payments was purely speculative.

I am satisfied from the evidence that allowing the verdict to stand would not be a miscarriage of justice. Stokes' testimony, taken as a whole and in light of the other evidence adduced at trial that corroborated key points, was not so inconsistent as to unjustly taint the verdict. At defendant's trial, Stokes testified that defendant was at the meeting on Amsterdam Avenue before the killing. Defendant argued that this was inconsistent with Stokes' testimony at the first trial, at which Stokes testified only that Danny Lugo was present at that meeting. This inconsistency was fully explored at trial on cross-examination and in summation. In addition, another of the government's cooperating witnesses, Yakkov Lefkowitz, testified at both trials that both defendant and Danny Lugo were at the meeting on Amsterdam Avenue. Ultimately, it was for the jury to determine the issue based upon its findings as to the credibility of the witnesses.

Next, defendant claims that the government presented different factual theories of the identity of the murderer in the two trials, in violation of his due process rights. That is, defendant

argues that at the earlier trial (in which defendant's brother, Danny Lugo, was prosecuted), Stokes testified only to Danny Lugo's presence at key events, while at defendant's trial, Stokes "inserted" Richard Lugo into those same events, and that this inconsistency impermissibly taints the verdict. Defendant also argues that the government deliberately elicited these inconsistent factual theories, in violation of his due process rights.

Defendant is simply not correct. The government did not offer two different, factually inconsistent theories at the two trials. The government never claimed, at either trial, to know which Lugo brother fired the fatal shot and, in fact, specifically acknowledged to the juries at both trials that it did not know who was the shooter. Rather, evidence was presented at both trials that both brothers were hired by Darryl Tyler, both went to meetings with members of the D-Nice Enterprise, both received payment from the Enterprise, and both were present on the night Lanny Dillard was shot. The government argued at both trials that Danny and Richard Lugo acted in concert and that one of them was the shooter. Thus, there was no significant factual inconsistency in the cases presented by the government at the two trials.

Defendant also challenges the court's instructions to the jury. Defendant argues that the jury instructions "conflated" the prosecution's multiple legal theories of liability and impermissibly allowed the jury to convict him of the murder charge without being unanimous on a single theory, in violation of his due process rights. The three theories of liability set forth in the jury instructions were (1) that defendant personally committed the murder of Lanny Dillard; (2) that defendant aided and abetted Danny Lugo in committing the murder; and (3) that defendant was guilty under the co-conspirator or *Pinkerton* theory of liability. *See Pinkerton v. United States*, 328 U.S. 640 (1946). In essence, defendant's claim is that the court's failure to instruct the jury that it must agree on a

5

single theory of liability in order to convict defendant of the murder charged in count two was in error.

At trial, there was no objection to the charge insofar as it did not require the jury to be unanimous on a single theory of liability under the murder count, and counsel points to no authority that indicates such a charge is required. The jury was instructed that all jurors were required to agree as to whether their verdict on a specific count was guilty or not guilty. Furthermore, I instructed the jury that they could find defendant guilty on count two of the indictment only if, in addition to the other RICO-based elements, the government proved beyond a reasonable doubt that the defendant himself was responsible for the murder of Lanny Dillard, under one of the three theories of liability described. There is simply no requirement that the jury agree upon a single mode of commission when a single crime can be committed in various ways. *See Schad v. Arizona*, 501 U.S. 624 (1991); *Griffin v. United States*, 502 U.S. 46 (1991). In sum, there was no error, much less the plain error required given the failure to object. The instructions on aiding and abetting liability and *Pinkerton* co-conspirator liability were in accord with the legal requirements for these charges and did not conflate multiple legal theories.

Defendant also argues that the court's jury instruction on aiding and abetting liability permitted the jury to convict him for aiding and abetting himself. Here, defendant appears to be arguing that, because there was no evidence that Danny Lugo was acting on behalf of the Enterprise, defendant could not be guilty of aiding and abetting him. As noted above, there was sufficient evidence that both Danny Lugo and defendant were paid by the Enterprise and were acting on its behalf.

## CONCLUSION

In sum, defendant's motion under Rules 29 and 33 is denied in its entirety.

        **SO ORDERED.**

        **/s/ Nina Gershon**
        **NINA GERSHON**
        **United States District Judge**

**Dated: June 15, 2005**
        **Brooklyn, New York**